UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL A. LEONARD,
　　　　Plaintiff,

　　　　v.

GENERAL MOTORS L.L.C., et al.,
　　　　Defendants.

No. 3:19-cv-1682 (SRU)

**RULING ON MOTION TO DISMISS**

　　　Michael A. Leonard, proceeding *pro se*, has brought the instant action against General
Motors L.L.C., General Motors Company, General Motors Holdings L.L.C., GM L.L.C./General
Motors LLC (hereinafter, "GM LLC"), General Motors Corporation (now 'Motors Liquidation
Company'), Motors Liquidation Company (formerly 'General Motors Corporation'), and
NGMCO Inc. (collectively, "Defendants").  As set forth in his amended complaint, Leonard
asserts a number of state and federal claims arising out of a car accident that occurred on January
5, 2017.

　　　General Motors Company has moved to dismiss all counts of Leonard's complaint on
Rule 12(b)(2) and 12(b)(6) grounds, arguing that:  (1) the court lacks personal jurisdiction over
General Motors Company; (2) the statute of limitation against the other defendants has expired;
and (3) Leonard has failed to state a cause of action upon which relief can be granted.  *See
generally* Mot. to Dismiss, Doc. No. 36-1.

　　　For the reasons that follow, the motion to dismiss is **granted in part** and **denied in part.**

1

I.       **Standard of Review**

   A.   Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

   A plaintiff bears the burden of showing that the court has personal jurisdiction over each

defendant.  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).

Where, as here, there has been no discovery on jurisdictional issues and the court is relying

solely on the parties' pleadings and affidavits, the plaintiff need only make a *prima facie*

showing that the court possesses personal jurisdiction over the defendant.  *Bank Brussels*

*Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).

   In diversity cases, courts apply the forum state's law to determine whether the court has

personal jurisdiction over a defendant.  *Arrowsmith v. United Press International*, 320 F.2d 219,

223 (2d Cir. 1963).  In federal question cases, when the defendant resides outside the forum

state, federal courts apply the forum state's personal jurisdiction rules unless the applicable

federal statute provides for nationwide service of process.[1]  *See PDK Labs v. Friedlander*, 103

F.3d 1105, 1108 (2d Cir. 1997).

   "Connecticut utilizes a familiar two-step analysis to determine if a court has personal

jurisdiction.  First, the court must determine if the state's long-arm statute reaches the foreign

corporation.  Second, if the statute does reach the corporation, then the court must decide

whether that exercise of jurisdiction offends due process."  *Bensmiller v. E.I. Dupont de*

*Nemours & Co.*, 47 F.3d 79, 81 (2d Cir. 1995) (citing *Green v. Sha-Na-Na*, 637 F. Supp. 591,

595 (D. Conn. 1986)).

---

[1] Because all of the federal claims are dismissed, and because none of the federal statutes at issue provide for nationwide service of process, Connecticut's personal jurisdiction rules apply.

B.  Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face."  550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555 (quotation marks omitted).  Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely."  *Id.* at 556 (quotation marks omitted).

## II.        Background

### A.  Factual Allegations[2]

On the morning of January 5, 2017, Leonard was driving a 2007 Chevrolet Cobalt southbound on I-95 through Branford, Connecticut and collided with a Jersey Barrier.  *See* Compl., Doc. No. 34, at ¶¶ 2–4.  The airbags in the 2007 Chevrolet Cobalt never deployed and the seat belts "failed to prevent [Leonard] from impacting the steering wheel."  *Id.* at ¶ 5.  As a result, Leonard flung forward and hit his face.  *See id.* at 10.  Leonard sustained several injuries from the accident, including migraines, a "permanent painful bite and discomforting sensitivity to cold and heat," emotional distress, and loss of wages.  *Id.* at ¶ 7.  The driver's side of the car was substantially damaged.  *Id.* at ¶ 4.

The 2007 Chevrolet Cobalt was assembled around December 22, 2006 at General Motors Corporation's assembly plant in Lordstown, Ohio; the seat belt and the front airbag systems were supplied by Takata and installed by Defendants.  *Id.* at 8.  Takata informed Defendants of issues with its airbags as early as 2006, and in 2008, Takata airbags were linked to 23 deaths and over 200 injuries across the country.  *Id.*  Nonetheless, Defendants failed to warn Leonard of the hazards associated with the product and continued to manufacture the 2007 Chevrolet Cobalt with Takata seat belts and airbags until 2010.  *Id.* at 8–9.

In May 2014, General Motors issued a recall of the 2012 Chevrolet Cruze Sedan due to an electrical problem with Takata's airbags, and in June 2014, General Motors stopped selling the 2013–2014 Model Chevy Cruze Cedars because of Takata's "suspect" airbags.  *See id.* at 9.  Over 19 million vehicles with Takata airbags were ultimately recalled by automakers.  *Id.* at 8.

---

[2] The facts are drawn from the complaint, and for purposes of the present motion I assume them to be true and draw all reasonable inferences in Leonard's favor.  *See Ashcroft,* 556 U.S. at 678–79.

B. Procedural History

On August 21, 2019, Leonard filed a complaint against General Motors Company in Connecticut Superior Court. *See* Compl., Doc. No. 1-1. Thereafter, on October 25, 2019, General Motors Company removed the case to this court and simultaneously filed a motion to dismiss the case on Rule 12(b)(2) and 12(b)(6) grounds, asserting that General Motors Company is a holding company with no ties to Connecticut and that the complaint failed to state a cognizable claim. *See* Doc. Nos. 1, 5-1.

On February 3, 2020, Leonard filed a motion seeking leave to amend his complaint to add the "correct entities liable in this action," which I granted. *See* Doc. Nos. 29, 33. Nine days later, on February 12, 2020, Leonard filed an amended complaint, adding as defendants General Motors L.L.C., General Motors Holdings L.L.C., GM LLC, General Motors Corporation, Motors Liquidation Company, and NGMCO Inc. *See generally* Am. Compl., Doc. No. 34.

As set forth in his complaint, Leonard asserts claims for (a) negligence; (b) strict liability in tort; (c) breach of warranty, express or implied; (d) failure to provide adequate warnings or instructions; and (e) fraudulent misrepresentation or omission. *See id.* He also alleges that Defendants violated the Fourteenth Amendment as well as 49 C.F.R. §§ 571.208 and 571.209, which are regulations promulgated pursuant to the National Traffic and Motor Vehicle Safety Act of 1966, 49 U.S.C. § 30101, et seq. ("the Safety Act"). *See id.* Leonard seeks monetary damages and two replacement vehicles of his choice. *Id.* at 14.

On February 26, 2020, General Motors Company filed a motion to dismiss Leonard's amended complaint, contending that (1) this court lacks personal jurisdiction over the company; (2) the claims against the newly-added defendants are time-barred; and (3) the complaint fails to state a colorable claim. *See* Mot. to Dismiss, Doc. No. 36. Leonard opposed the motion on

March 9, 2020, and General Motors replied on March 24, 2020.  *See* Doc. Nos. 37, 40.

Discovery has been stayed pending a decision on the motion.  *See* Doc. No. 39.

## II.   Discussion

### A.   Personal Jurisdiction

General Motors Company first argues that the claims against it should be dismissed under

Federal Rule of Civil Procedure 12(b)(2) because Leonard has failed to adequately demonstrate

that General Motors Company is subject to this court's jurisdiction.  *See* Mot. to Dismiss, Doc.

No. 36-1, at 3.  That argument has merit.

Connecticut's long-arm statute pertaining to foreign corporations is found in Conn. Gen.

Stat. § 33-929 and states, in relevant part:

(a) The registered agent of a foreign corporation authorized to transact business in this state is the corporation's agent for service of process, notice or demand required or permitted by law to be served on the foreign corporation. When the registered agent is other than the Secretary of the State and his successors in office, service may be effected by any proper officer or other person lawfully empowered to make service by leaving a true and attested copy of the process, notice or demand with such agent or, in the case of an agent who is a natural person, by leaving it at such agent's usual place of abode in this state; . . .

(f) Every foreign corporation shall be subject to suit in this state . . . on any cause of action arising as follows: (1) "[o]ut of any contract made in this state or to be performed in this state;". . . (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) "out of tortious conduct in this state."

Conn. Gen. Stat. § 33-929.

Leonard contends that the exercise of jurisdiction over General Motors Company is

conferred by Connecticut's long-arm statute because General Motors Company is effectively

General Motors LLC and jurisdiction is properly exercised over General Motors LLC.  *See* Opp.

to Mot. to Dismiss, Doc. No. 37, at 4–5, 11–12, 16–17.  He elaborates that General Motors

Company was registered to do business in Connecticut until 2009, at which time it re-named itself General Motors LLC without changing its employees or registration address.  *See id*. at 4–5, 11–12.

Leonard relies on a "Business Inquiry" record for "General Motors Company" as support, which lists a Michigan business and mailing address, categorizes the company's status as "withdrawn," and reports as its agent "Secretary of the State" with a business address in Hartford, Connecticut.  *See* Ex. B-2, Doc. No. 37, at 38.  He also relies on a "Business Inquiry" record for "General Motors LLC," which lists the same business and mailing address as the General Motors Company's record, reports October 16, 2009 as its date of registration, and identifies as its agent "Corporation Service Company" with a business address in Hartford.  *See* Ex. A-1, Doc. No. 37, at 36.

Leonard's argument is unavailing principally because its premise is flawed.  Leonard assumes that the General Motors Company that existed in 2009 is the same General Motors Company that is presently defending this suit and over whom personal jurisdiction is contested, but the complaint does not allege, and Leonard does not argue, that both entities are the same.  On the contrary, the business records on which Leonard relies suggest that the General Motors Company that was previously registered to do business in Connecticut is no longer in existence.  *See* Doc. No. 37, at 38 (listing "Withdrawn" as General Motor Company's business status).  And as the affidavit of Rick Hansen, Secretary of General Motors Company, General Motors Holdings LLC, and General Motors LLC, elucidates, the present General Motors Company is not General Motors LLC nor is it the predecessor of General Motors LLC.  *See* Ex. B, Doc. No. 36-1, at ¶ 11.  Hansen adds that General Motors LLC was known as General Motors Company between July 9, 2009 and October 16, 2009, when it converted from a corporation to an LLC

with a different name as part of a broader reorganization.  *See id.* at 30 ¶¶ 8–9.  As part of that

reorganization, a new ultimate parent company was also created, which changed its name from

General Holdings Company to General Motors Company on October 16, 2009.  *Id.* at ¶ 9.

Leonard's argument concerning the former General Motors Company therefore does not bear on

the question whether jurisdiction is authorized over the present General Motors Company that

was served in this case.

      Moreover, even assuming that jurisdiction is proper over General Motors Company's

subsidiaries—General Motors Holdings LLC and General Motors LLC—that alone does not

justify the exercise of jurisdiction over General Motors Company under Connecticut's long-arm

statute.  Under Connecticut law, "[i]n order to establish jurisdiction based on the presence of a

subsidiary, the parent corporation must fully control the subsidiary corporation such that the

corporate veil must be pierced."  *Am. Wholesalers Underwriting, Ltd. v. Am. Wholesale Ins.*

*Grp., Inc.,* 312 F. Supp. 2d 247, 255 (D. Conn. 2004); *accord Shanshan Shao v. Beta Pharma,*

*Inc.,* 2019 WL 7882485, at *10 (D. Conn. Sept. 23, 2019) ("[B]efore [a long arm] statute can be

utilized as a basis for the exercise of jurisdiction over the [nonresident] foreign corporation, the

corporate veil must be pierced so that acts of the domestic subsidiary can be imputed to the

absent parent.") (citation omitted).  Connecticut courts generally pierce the corporate veil only

under "exceptional circumstances," such as when "the corporation is a mere shell, serving no

legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote

injustice."  *Naples v. Keystone Bldg. & Dev. Corp.*, 295 Conn. 214, 233 (2010) (internal citations

omitted).  "The improper use of the corporate form is the key to the inquiry."  *Id.*

      Here, the complaint does not articulate any factual allegations that suggest that piercing

the corporate veil for jurisdictional purposes is warranted.  It does not, for instance, suggest that

the "companies have failed to observe the corporate formalities or were identical in any way," *Tekdoc Servs., LLC v. 3i-Infotech, Inc.,* 2009 WL 5064456, at *5 (D. Conn. Dec. 15, 2009), or that General Motors Company "dominates or controls its subsidiaries," *Am. Wholesale Underwriting*, 312 F. Supp. 2d at 258. The conclusory assertion in Leonard's opposition that Defendants are "intrinsically tied together in this case" does not cure that defect. Moreover, although Leonard alleges that General Motors Company has 100% ownership interest over General Motors Holdings LLC, "[m]ere ownership by a parent corporation of a subsidiary corporation present in the forum state generally will not subject the parent to personal jurisdiction in that forum." *Tekdoc Servs., LLC*, 2009 WL 5064456, at *4 (citation omitted). That rule applies "even when the separation between parent and subsidiary is merely formal, as long as it is real." *Id.* (citation omitted).

Lastly, Leonard appears to contend that jurisdiction may extend to General Motors Company under Conn. Gen. Stat. §§ 33-929(f)(1) and (4)[3]—which confers personal jurisdiction over foreign corporations on any cause of action arising "out of any contract made in this state or to be performed in this state" or "out of tortious conduct in this state"—because the complaint alleges that General Motors Company produced and shipped the defective 2007 Chevrolet Cobalt to Connecticut and breached the warranty agreement. *See* Doc. No. 37, at 12–15. The complaint, however, is conclusory with respect to General Motors Company; it does not identify any specific actions taken by General Motors Company in particular and instead paints the defendants with a broad brush. *See, e.g.*, Am. Compl., Doc. No. 34, at 8 (alleging that the airbag and seat belt system "were installed by defendants"); *id.* at 10 (alleging that "the defendants . . .

_____

[3] Leonard also references section 38a-25(b) as a basis for jurisdiction. That provision does not exist and, further, section 38-25 was transferred to section 38a-76, which discusses the maintenance of reserves for insurance companies and does not appear applicable in this case. *See* Conn. Gen. Stat. § 38a-76. Accordingly, I address only whether jurisdiction is appropriate under sections 33-929(f)(1) and (4).

continu[ed] to manufacture, design, assemble, and install [Takata air bags]"). Because the complaint is devoid of factual detail regarding General Motors Company, Leonard's argument is unavailing.[4] *See Doe v. Delaware State Police*, 939 F. Supp. 2d 313, 329 (S.D.N.Y. 2013) (concluding that the allegation that "Defendants issue warrants, execute warrants, and seek extradition in New York, make New York court appearances, and purchase goods and services from New York manufacturers" was defectively conclusory and thus did not support a *prima facie* case of personal jurisdiction over one of two defendants under New York's long-arm statute); *Rivera v. Armstrong*, 2007 WL 683948, at *1 (D. Conn. Mar. 2, 2007) ("Vague and conclusory allegations, however, 'are not enough to establish personal jurisdiction.'") (citation omitted).

For the foregoing reasons, and construing the pleading and affidavits in the light most favorable to Leonard, I conclude that Leonard has failed to make a *prima facie* showing to bring General Motors Company within this court's jurisdiction. The motion to dismiss is therefore **granted** to the extent it seeks to dismiss all claims against General Motors Company.

B. Statute of Limitations

General Motors Company next argues that all of Leonard's claims against the remaining defendants should be dismissed as barred by the statute of limitations. Mot. to Dismiss, Doc. No. 36-1, at 5–6. I disagree.

The statute of limitations for Connecticut product liability claims and section 1983 claims is three years.[5] *See* Conn. Gen. Stat. § 52-577a ("No product liability claim, as defined in

---

[4] I further note that Hansen's affidavit stated that General Motors Company has no automotive business operations and was not involved in the design, manufacture, testing, marketing, sale or distribution of the vehicle at issue. *See* Ex. B, Doc. No. 36-1, at ¶¶ 4, 5.
[5] The parties do not address the proper statute of limitations for the Safety Act. Because I dismiss the Safety Act claims for failure to state a claim, I do not decide here whether those claims are time-barred.

section 52-572m,[6] shall be brought but within three years from the date when the injury, death or property damage is first sustained or discovered or in the exercise of reasonable care should have been discovered"); *Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994) (holding that the three-year statute of limitations set forth in Conn. Gen. Stat. § 52-577, a personal injury statute, applied to section 1983 actions).

Under Connecticut law, a product liability claim accrues "when the plaintiff has knowledge of facts that would put a reasonable person on notice of the nature and extent of an injury, and that the injury was caused by the negligent conduct of another." *Bogdan v. Zimmer, Inc.,* 165 F. App'x 883, 884 (2d Cir. 2006). A section 1983 claim similarly accrues when the "plaintiff knows or has reason to know of the injury which is the basis of his action." *S. Lyme Prop. Owners Ass'n, Inc. v. Town of Old Lyme*, 539 F. Supp. 2d 547, 556 (D. Conn. 2008) (citation omitted).

In the present case, the complaint suggests that the cause of action accrued on January 5, 2017, the date the accident occurred, when the airbag and seat belt systems allegedly malfunctioned, and when Leonard was injured. The parties do not argue otherwise. *See* Mot. to Dismiss, Doc. No. 36-1, at 6; Opp. to Mot. to Dismiss, Doc. No. 37, at 21. Leonard's initial complaint against General Motors Company, filed on August 21, 2019, was therefore timely; his motion to amend the complaint, filed on February 3, 2020, was not. *See Rothman v. Gregor*, 220 F.3d 81, 96 (2d Cir. 2000) ("When a plaintiff seeks to add a new defendant in an existing action,

---

[6] Under section 52-572m, a "[p]roduct liability claim" includes "all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product." Conn. Gen. Stat. § 52–572m. It also includes, but is not limited to, "all actions based on the following theories: Strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent." *Id.*

the date of the filing of the motion to amend constitutes the date the action was commenced for statute of limitations purpose") (citation omitted).

But my inquiry does not end there.  Federal Rule of Civil Procedure 15(c) allows a party to proceed with otherwise late-filed claims if certain circumstances exist.  Under that rule, if a complaint is amended to add a defendant after the statute of limitations has expired, the amended complaint is not time-barred if it "relates back" to a timely-filed complaint.  *VKK Corp. v. Nat'l Football League,* 244 F.3d 114, 128 (2d Cir. 2001).  Rule 15(c)(1) specifically provides:  "An amendment to a pleading relates back to the date of the original pleading when . . .

>  (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

>> (i)  received such notice of the action that it will not be prejudiced in defending on the merits; and

>> (ii)  knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

Three requirements therefore must be satisfied in order for an amended complaint that names a new party to relate back to the original complaint:  (1) "the claim against the newly named defendant must have arisen 'out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading;'" (2)  "within the period provided by Rule 4(m) for serving the summons and complaint . . . the newly named defendant must have 'received such notice of the action that it will not be prejudiced in defending on the merits;'" and (3) "the plaintiff must show that, within the Rule 4(m) period, the newly named defendant 'knew or should have known that the action would have been brought against it, but for a mistake

concerning the proper party's identity.'"  *Krupski v. Costa Crociere S. p. A.,* 560 U.S. 538, 545

(2010) (citing Fed. R. Civ. P. 15(c)(1)).  All three requirements are met here.

First, both complaints arise out of the production of the 2007 Chevrolet Cobalt and the

January 5, 2017 car accident during which the Takata airbags and seat belt allegedly failed to

function properly.  Second, there will be no prejudice to the newly added defendants because

they are all affiliated with General Motors Company and therefore have actual or constructive

notice of the lawsuit.  *See VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 129 (2d Cir. 2001)

("[t]he misidentification of similarly named or related companies is the classic case for

application of Rule 15(c) relation back") (quoting *William H. McGee & Co. v. M/V Ming Plenty*,

164 F.R.D. 601, 606 (S.D.N.Y. 1995)).  In Hansen's affidavit, he notes that General Motors

Company, General Motors Holdings LLC, and General Motors LLC have an ongoing hierarchal

relationship, with General Motors Company serving as the holding company.  *See* Doc. No. 36-

1, at 29–30.  The affidavit further provides that, on July 10, 2009, General Motors LLC acquired

substantially all the assets of Motor Liquidation Company, formerly known as General Motors

Corporation.  *Id*. at 30.  In addition, the complaint alleges that NGMCO Inc. owns substantially

all of Motor Liquidation Company's assets.  Am. Compl., Doc. No. 34, at 3–4.

Moreover, although Leonard has not yet served the new defendants and no appearances

have been filed on their behalf, counsel for General Motors Company propounds arguments on

behalf of all defendants in its moving papers.  That briefing, in my view, further demonstrates

that the additional defendants were or should have been aware of the lawsuit, and suggests that

they ultimately will be represented by the same counsel and not prejudiced in their defense.  *See*

*Espaillat v. Rite Aid Corp.,* 2003 WL 721566, at *5 (S.D.N.Y. Mar. 3, 2003) ("Knowledge of a

lawsuit may be imputed to a proposed defendant through a shared attorney provided the attorney

knew or should have known that but for a mistake concerning the identity of the proper party, the proposed defendant would be added to the existing lawsuit.").  And if General Motors Company does not have any automotive operations as Hansen declares in his affidavit, Hansen and counsel should have recognized that the entity that does conduct automotive operations was a prospective co-defendant.  *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 129 (2d Cir. 2001) (concluding that there was no prejudice when the president of a newly-added defendant "should have known that some of the allegations . . . were meant to be directed" at his company). Accordingly, I conclude that the first and third requirements have been met.

Lastly, I conclude that the new defendants knew or should have known that the action would have been brought against them but for a "mistake concerning the identity of the proper parties."  At the outset, I note that this case is distinguishable from *Barrow v. Wethersfield Police Dep't*, where the Second Circuit held that "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities."  *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995), *modified*, 74 F.3d 1366 (2d Cir. 1996); *see also Hogan v. Fisher,* 738 F.3d 509, 517 (2d Cir. 2013) ("This Circuit has interpreted [Rule 15(c)(1)(C)] to preclude relation back for amended complaints that add new defendants, where the newly added defendants were not named originally because the plaintiff did not know their identities.").  The *Barrow* Court added, "the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake" under Rule 15(c). *Barrow*, 66 F.3d at 470.

In *Barrow*, an incarcerated plaintiff filed a complaint against the Wethersfield Police Department, alleging that unidentified officers used excessive force in effecting his arrest.  *Id*. at

466.  The district court, within the statute of limitations period, directed Barrow to add individual police officers as defendants, and Barrow named "John Doe" officers as defendants in a subsequently amended complaint.  *Id*. at 467.  After the statute of limitations passed, he moved to amend his complaint again to add the names of the individual police officers, which the court granted.  *Id*.  The court later granted the officers' motion to dismiss the complaint on the ground the claims against them were time-barred.  *Id*.

Barrow appealed and the Second Circuit affirmed, concluding that the amended complaint adding the individual police officers as defendants did not relate back to the complaint naming the "John Doe" defendants.  *Id*. at 470.  In so concluding, the Court reasoned that they were "not faced with a plaintiff who mistakenly believed that suing the police department, rather than a department head, would suffice . . . Barrow was not 'mistaken' for purposes of rule 15(c)—he knew exactly what the court required."  *Id*.

*Barrow* is not dispositive here.  Unlike that case, there is no indication that Leonard was aware that any additional defendants should have been sued when he filed the original complaint. Instead, the circumstances compel the opposite conclusion.  Leonard did not name any "John Doe" defendants at the outset of the litigation and, as noted in his opposition, he only learned of the "correct entity to bring this lawsuit against" once Defendants submitted their initial disclosures on November 26, 2019—three months after Leonard filed suit and around one month before the statute of limitations was set to expire.  *See* Opp., Doc. No. 37, at 6; *see also* Mot. to Amend, Doc. No. 29, at 1 ("The Plaintiff amends this complaint to reflect the present names and[/]or names that the defendant has disclosed to him are the correct entities liable in this action."); *id*. at 1–2 ("General Motors Company operates under multiple names . . . it is unclear

15

as to what or who the proper entity is to bring a claim against.").  The original complaint also
makes clear that Leonard intended to sue the manufacturer of the 2007 Chevrolet Cobalt.

In light of the foregoing, Leonard represents "a plaintiff who mistakenly believed" that
suing the original defendant—that is, General Motors Company—"would suffice," and
Defendants had no reason to think otherwise.  *Barrow*, 66 F.3d at 470; *see also* S*usan Faris*
*Designs, Inc. v. Sheraton New York Corp*., 2000 WL 191689, at *4–5 (S.D.N.Y. Feb. 10, 2000)
(holding that a complaint adding new defendants related back when the initial complaint named
the defendant originally believed to be responsible).

My conclusion is buttressed by Defendants' similar names, their complex corporate
structure, and the re-naming of General Motors Company as General Motors LLC in 2009.  Each
of those facts further illustrates how the new defendants knew or should have known that
Leonard's failure to sue them at the outset was a mistake.  Indeed, in a case analogous to this
one, the Second Circuit held that amendment and relation back under Rule 15 was warranted
when "the name in the caption approximates the correct name of the defendant, the correct name
is not readily identifiable, and the defendant has taken the risk of incorrect identification by
conducting business under a name easily confused with those of its parent and its affiliated
companies and divisions."  *Datskow v. Teledyne, Inc., Cont'l Prod. Div*., 899 F.2d 1298, 1302
(2d Cir. 1990).

The Supreme Court's decision in *Krupski v. Costa Crociere S.p.A*, is also instructive.  In
that case, the Eleventh Circuit determined that relation back was not appropriate because the
plaintiff knew of the company's identity as a potential defendant before the statute of limitations
had expired and therefore made a "deliberate choice instead of a mistake" in not initially naming
a company as a defendant.  *See* 560 U.S. 538, 546–48 (2010).  The Supreme Court reversed,

16

concluding that "[t]he question under Rule 15(c)(1)(C)(ii) is not whether [the plaintiff] knew or should have known the identity of [the added defendant], but whether [the added defendant] knew or should have known that it would have been named as a defendant but for an error." *Id.* at 548.  The Court explained:

> That a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity. A plaintiff may know that a prospective defendant—call him party A—exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the "conduct, transaction, or occurrence" giving rise to her claim. If the plaintiff sues party B instead of party A under these circumstances, she has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties.

*Id.* at 549.

In reaching its conclusion, the Court was guided by the purpose of relation back:  "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits."  *Id.* at 550.  The Court observed that no relation back "would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity."[7]  *Id.*  Those considerations apply to this case with equal force.

Several courts in this circuit have since concluded that Rule 15(c)(1)(C) does not encompass instances in which a plaintiff seeks relation back of a complaint that, as here, adds rather than substitutes a new party.  *See, e.g.,  In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d

---

[7] In the wake of the *Krupski* ruling, courts have questioned whether *Barrow* remains good law.  *See Archibald v. City of Hartford*, 274 F.R.D. 371, 377 (D. Conn. 2011).  That speculation seems to have been put to rest following a recent decision by the Second Circuit, where the Court reiterated the holding of *Barrow* that "the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake."  *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013); *see also DaCosta v. City of New York*, 296 F. Supp. 3d 569, 592–93 (E.D.N.Y. 2017) ("Despite *Krupski*'s admonition that courts focus on the knowledge of the defendant, rather than that of the plaintiff, the Court of Appeals for the Second Circuit has not yet abandoned the *Barrow* rule.").  Because *Barrow* is not controlling here, I need not assess the decision's vitality.

125, 129 (E.D.N.Y. 2014) (concluding that Rule 15(c)(1)(C) generally encompasses only "wrong party" cases and not "additional party" cases because "additional party" cases generally involve "no mistake concerning the proper party's identity") (quotation marks omitted).  This case exemplifies why that principle is, in my view, too restrictive and fails to apply the lessons of *Krupski*.  It is clear that Leonard mistakenly believed that suing General Motors Company would suffice, and without conceding that General Motors Company is not a proper party, he seeks to add other entities in the corporate family that were more directly responsible for his injuries and whose involvement only recently came to light.  Allowing the amended complaint to relate back furthers the doctrine's goal of deciding claims on their merits without prejudicing the defendants. *Doe v. Whelan*, 2010 WL 5093102 at *2 n.3 (D. Conn. Dec. 8, 2010) ("Regardless of whether [*Krupski*] involved the addition or substitution of defendants, the rationale expressed therein for permitting the relation back, namely the preference for enabling decisions on the merits by permitting the correction of errors, supports a finding that it is appropriate here as well."); *Roe v. Johnson*, 2011 WL 8189861, at *4 (E.D.N.Y. Aug. 12, 2011) (*Krupski*'s holding "applies equally to cases where the mistake concerning the proper party's identity results in the substitution or addition of defendants.") (internal quotation marks omitted).

For the foregoing reasons, I conclude that the amended complaint relates back to the original one and **deny** the motion to dismiss to the extent it seeks to dismiss the claims as time-barred.[8]

---

[8]  Because I conclude that the claims are not time-barred in light of the relation back doctrine, I do not address Leonard's argument that the claims are not time-barred because of the equitable tolling doctrine.

C.  <u>Failure to State a Claim</u>

General Motors Company next argues that the complaint should be dismissed in its

entirety on Rule 12(b)(6) grounds because it fails to state a cognizable claim.  *See* Doc. No. 36-1,

at 7.  I address each claim in turn.

1.  *Connecticut Products Liability Act*

The Connecticut Products Liability Act ("CPLA"), Conn. Gen. Stat. § 52-572m*,* et seq.*,*

is the exclusive remedy for all product liability claims in Connecticut.  Conn. Gen. Stat. § 52-

572n(a).  Because Leonard's state law claims are all product liability claims as defined in section

52-572m—that is, claims "brought for personal injury, death or property damage caused by the

manufacture, construction, design, formula, preparation, assembly, installation, testing,

warnings, instructions, marketing, packaging or labeling of any product"—those claims cannot

proceed as independent causes of action.  Rather than dismissing the claims, however, I construe

them as one claim under the CPLA with multiple theories.  *See Collazo v. Nutribullet*, 2020 WL

4194616, at *2 (D. Conn. July 21, 2020) ("The statute does not abolish common law claims in

product liability actions, but instead incorporates them into a single count to simplify pleadings .

. . Because the Counts fall within the scope of the CPLA, the Court finds that CPLA's exclusivity

provisions preclude Plaintiff's separate breach of warranty counts.").

Leonard raises the following theories of liability under the CPLA:  (1) negligence; (2)

strict liability in tort; (3) breach of warranty, express or implied; (4) breach of failure to

discharge a duty to warn or instruct; and (5) fraudulent misrepresentation or nondisclosure.

Before turning to those theories, I address the threshold question whether Defendants qualify as

"product sellers" under the CPLA.  The CPLA provides that, "[a] product liability claim . . .

shall be in lieu of all other claims against product sellers." Conn. Gen. Stat. § 52–572n(a).

Accordingly, to state a product liability claim under the CPLA, a plaintiff must plausibly allege

that the defendants are "product sellers." *Gallinari v. Kloth*, 148 F. Supp. 3d 202, 213 (D. Conn.

2015).  The CPLA defines a "product seller," in relevant part, as "any person or entity, including

a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such

products whether the sale is for resale or for use or consumption."  Conn. Gen. Stat. § 52-

572m(a).

In this case, the complaint fails to plausibly allege that General Motors Holdings LLC or

NGMCO Inc. were "engaged in the business" of selling products as defined in section 52-572m.

Instead, the complaint merely alleges that General Motors Holdings LLC is the intermediate

subsidiary of General Motors Company and that NGMCO Inc. is the owner of "substantially all

assets" of Motors Liquidation Company.  *See* Am. Compl., Doc. No. 34, at 2–3.  Although

Motors Liquidation Company allegedly designed, manufactured, assembled, marketed, and sold

the 2007 Chevrolet Cobalt, "it is a fundamental principle of corporate law that the parent

corporation and its subsidiary are treated as separate and distinct legal persons even though the

parent owns all the shares in the subsidiary and the two enterprises have identical directors and

officers." *Cameron v. Olin Corp.,* 838 F. Supp. 2d 59, 67 (D. Conn. 2012) (citing *SFA Folio

Collections, Inc. v. Bannon,* 217 Conn. 220, 232 (1991)).

For those reasons, I dismiss all CPLA claims against General Motors Holdings LLC and

NGMCO Inc. and address only those asserted against the remaining defendants:  General Motors

LLC, General Motors Corporation, GM LLC, and Motors Liquidation Company.

a.  Negligent Design and Manufacture

Leonard first asserts claims grounded in negligent design and negligent manufacture.[9]

*See* Am. Compl., Doc. No. 34, at 7.  To prevail on a claim for negligence under the CPLA, a

plaintiff must establish:  "(1) duty; (2) breach of that duty; (3) causation; and (4) actual injury."

*Walters v. Howmedica Osteonics Corp.*, 676 F. Supp. 2d 44, 51 (D. Conn. 2009).  "Unlike strict

liability, which focuses on the product itself and finds the manufacturer liable if the product is

defective, negligence centers on the manufacturer's conduct."  *Philadelphia Indem. Ins. Co. v.*

*Lennox Indus., Inc.,* 2020 WL 705263, at *6 (D. Conn. Feb. 12, 2020) (quotation marks omitted).

Under Connecticut law, "[t]he test for the existence of a legal duty of care entails (1) a

determination of whether an ordinary person in the defendant's position, knowing what the

defendant knew or should have known, would anticipate that harm of the general nature of that

suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of

whether the defendant's responsibility for its negligent conduct should extend to the particular

consequences or particular plaintiff in the case."  *Simoneau v. Stryker Corp.*, 2014 WL 1289426,

at *11 (D. Conn. Mar. 31, 2014) (citing *Gazo v. City of Stamford*, 255 Conn. 245, 250 (2001)).

Unlike cases that have dismissed product liability claims sounding in negligence, this

complaint attributes the airbag system's shortcomings to the defendants by alleging that the

defendants knew or should have known that the airbag was in an unreasonably dangerous,

defective condition and yet continued to sell it without warning.  *See Philadelphia Indem. Ins.*

*Co..,* 2020 WL 705263, at *6–7 (dismissing negligent claim when complaint "failed to show that

the alleged defects were caused by [the defendants'] negligent conduct"); *Karazin v. Wright*

*Med. Tech., Inc*., 2018 WL 4398250, at *7 (D. Conn. Sept. 14, 2018) (dismissing negligence

---

[9] To the extent Leonard also propounds a claim for negligent misrepresentation, that claim is analyzed below together with the other misrepresentation claims.  His negligent failure to warn claim is also addressed below.

claim when complaint included "no factual support for an inference that negligence caused that manufacturing defect").

For instance, Leonard alleges that Takata informed General Motors of issues with Takata's airbags as early as 2006, but that the defendants continued to manufacture the 2007 Chevrolet Cobalt with Takata's airbags until 2010.  Am. Compl., Doc. No. 34, at 8–9.  He further alleges that the airbags were defective since 1998, and that in 2008, the Takata airbags were linked to 23 deaths and over 200 injures in this country alone.  *Id.*

In light of those allegations, I conclude that an ordinary person in the defendants' position, knowing what they knew or should have known, would anticipate that the harm that Leonard experienced was likely, and that responsibility for their negligent conduct should extend to this case.  For that reason, and because Leonard adequately alleges that the defendants' negligence caused the injuries that he sustained from the January 5, 2017 collision, I further conclude that he has pled enough facts to "nudge" his claim "across the line from conceivable to plausible" as *Twombly* requires.  550 U.S. at 570.

Accordingly, Leonard has stated a plausible negligent design and manufacture claim against General Motors LLC, General Motors Corporation, GM LLC, and Motors Liquidation Company.

> b.   Strict Liability

"Strict liability claims under the CPLA can include theories of manufacturing defect, design defect, or state law 'malfunction theory,'" as well as failure to warn.  *Karazin v. Wright Medical Technology, Inc.*, 2018 WL 4398250, at *3 (D. Conn. Sept. 14, 2018).  Leonard proffers a number of theories in support of the defendants' liability; I address each one in turn.

i.   Manufacturing Defect

A manufacturing defect is "a flaw in the manufacturing process which causes the product to deviate from the design standards and intended specifications." *Id.* (citations omitted).  To prevail on a manufacturing defect claim, a plaintiff must first prove the following five elements: "(1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition." *Bifolck v. Philip Morris, Inc*., 324 Conn. 402, 434 (2016) (citations omitted).

To plausibly state a manufacturing defect claim, Leonard "must plead factual content showing the plausibility" that the airbags and seat belt deviated from "the intended design and specifications in some way." *Karazin,* 2018 WL 4398250, at *3.  In his complaint, Leonard alleges that the defendants manufactured, assembled, marketed, and sold the 2007 Chevrolet Cobalt with a defective seat belt and airbags. *See* Am. Compl., Doc. No. 34, at. 3–4.  He elaborates that, when he collided into another vehicle on January 5, 2017, the airbags never deployed and the seat belt failed to prevent him from hitting the steering wheel. *Id*. at ¶ 5. Because those allegations identify the specific components of the car that Leonard claims were defective and explain how they were defective, the complaint provides enough factual support to state a manufacturing defect claim. *See Mals v. Smith & Nephew, Inc.,* 2020 WL 3270835, at *4 (D. Conn. June 17, 2020) (concluding that a complaint sufficiently stated a manufacturing defect claim when it contained "allegations which place[d] Defendant on notice of the exact insert in question and how it failed").

Although the complaint would benefit from additional detail, "a court must not, at the motion to dismiss a manufacturing defect claim stage, 'require the plaintiff to possess technical

or scientific knowledge about the inner workings of the product, which would contravene the notice pleading requirement of Federal Rule of Civil Procedure 8, even under the *Iqbal-Twombly* standard.'"  *Id.* at *3 (citation omitted).  That principle is especially appropriate in cases where, as here, the plaintiff is proceeding *pro se*.

Accordingly, Leonard has met his pleading burden with respect to his manufacturing defect claim.

### ii.  Design Defect

In contrast to a manufacturing defect claim, a design defect claim is "predicated on a product which is otherwise properly manufactured, but is nonetheless unreasonably dangerous because its attributes can cause an unexpected injury."  *Karazin,* 2018 WL 4398250, at *4 (citation and quotation marks omitted).  To prevail on a strict liability claim alleging design defect, a plaintiff must establish the same five elements listed above for the manufacturing defect claim.  *See Bifolck*, 324 Conn. at 434.  A plaintiff propounding a design defect claim may establish the second element—that the product's defect is "unreasonably dangerous"—under the "risk-utility" test or the "consumer expectation" test.  *Id.* at 434–35.  As the *Bifolck* Court announced, "under the risk-utility test, which will govern most cases, a product is in a defective condition unreasonably dangerous to the consumer or user if:

1.  A reasonable alternative design was available that would have avoided or reduced the risk of harm and the absence of that alternative design renders the product unreasonably dangerous;" or

2.  "The product is a manifestly unreasonable design in that the risk of harm so clearly exceeds the product's utility that a reasonable consumer, informed of those risks and utility, would not purchase the product."

*Id*.

Under the "consumer expectation test," a product is "unreasonably dangerous" if it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Id*. (citation omitted). "The product must fail to meet legitimate, commonly held, minimum safety expectations of that product when used in an intended or reasonably foreseeable manner." *Id*.; *see also Izzarelli v. R.J. Reynolds Tobacco Co*., 321 Conn. 172, 194 (2016) ("The ordinary consumer expectation test is reserved for cases in which the product failed to meet the ordinary consumer's *minimum* safety expectations, such as *res ipsa* type cases.") (emphasis in original).

Here, by alleging that the airbags failed to deploy and that the seat belt failed to prevent Leonard from hitting his head on the steering wheel upon impact, the complaint adequately establishes that the airbag and seat belt systems failed to perform as safely as a consumer ordinarily would expect under the consumer expectation test. Leonard has therefore pled enough facts to state a colorable design defect claim. *Mals v. Smith & Nephew, Inc*., 2020 WL 3270835, at *4 (D. Conn. June 17, 2020) ("The Court finds that the Plaintiff has met his [design defect] burden by alleging that the product was more dangerous than the average consumer would expect.").

I find no merit in General Motors Company's argument that Leonard's failure to identify safer, practicable alternative designs is fatal to his claim. As the court in *Mals* observed, "[r]equiring [a p]laintiff to identify a specific alternative design places too great a burden on him to meet pleading requirements." *See id.* at *5. Moreover, the Connecticut Supreme Court has held that proof of a feasible alternative design is not an essential element of a plaintiff's *prima facie* showing for a defective design claim. *See Potter v. Chicago Pneumatic Tool Co*., 241

Conn. 199, 219 (1997) ("[W]e decline to adopt the requirement that a plaintiff must prove a feasible alternative design as a sine qua non to establishing a prima facie case of design defect.").

Accordingly, I conclude that Leonard has stated a valid design defect claim.

### iii. Malfunction Theory

To the extent Leonard purports to bring a separate claim based on the malfunction theory, the allegations support a plausible inference that the malfunction theory applies and that Leonard has a cognizable claim thereunder. Although most product liability claims are based on direct evidence of a particular product defect, Connecticut courts have allowed plaintiffs to proceed under a "malfunction theory" when such evidence is unavailable. *Metro. Prop. & Cas. Ins. Co. v. Deere & Co.*, 302 Conn. 123, 131–33 (2011). Under that theory, a plaintiff may "establish a prima facie product liability case on the basis of circumstantial evidence." *Id*. at 133.

The Connecticut Supreme Court set forth the contours of the malfunction theory in its seminal decision, *Metropolitan Property and Cas. Ins. v. Deere & Co.*, 302 Conn. 123 (2011). There, the Court held that, "when direct evidence of a specific defect is unavailable, a jury may rely on circumstantial evidence to infer that a product that malfunctioned was defective at the time it left the manufacturer's or seller's control if the plaintiff presents evidence establishing that[:]

> (1) the incident that caused the plaintiff's harm was of a kind that ordinarily does not occur in the absence of a product defect, and
>
> (2) any defect most likely existed at the time the product left the manufacturer's or seller's control and was not the result of other reasonably possible causes not attributable to the manufacturer or seller."

*Id*. at 139–40.

As a threshold matter, Leonard's complaint gives rise to a plausible inference that the malfunction theory applies. The malfunction theory extends to cases in which a plaintiff "is

26

unable to produce direct evidence of a defect because of the loss of essential components of the product." *Id*. at 131–32. Here, Leonard alleges that the car was effectively "totaled" by the collision, which suggests that the airbags and seat belts were destroyed and are therefore unavailable for inspection.

Turning to the substantive elements of the malfunction theory, the complaint sufficiently pleads that the incident that caused Leonard's injuries was of a kind that ordinarily does not occur in the absence of a product defect and that the defects most likely existed when the car left the defendants' control. In particular, common experience suggests that, upon impact, airbags would typically deploy and seat belts would typically restrain the driver and passengers. *See Deere,* 302 Conn. at 153–54 (weighing common experience in assessing whether the first requirement of the malfunction theory was met). In addition, although the car was manufactured over a decade prior to the accident, the complaint alleges that General Motors recalled the 2012 Chevrolet Cruze Sedan due to an electrical problem with Takata's airbags in May 2014; that General Motors stopped selling the 2013–2014 Model Chevy Cruze Cedars in June 2014 because Takata's "suspect" airbags were assembled with an "incorrect part"; and that automakers ultimately recalled over 19 million vehicles equipped with Takata airbags. *See* Compl., Doc. No. 34, at 8–9. Drawing all reasonable inferences in Leonard's favor and construing the complaint liberally, those allegations—although they might concern different vehicles—could plausibly refer to similar or the same airbags that Leonard now challenges, suggesting that the defects were attributable to the defendants. *Deere*, 302 Conn. at 140–41 (listing "similar malfunctions in similar products that may negate the possibility of other causes" as evidence supporting the malfunction theory's requirements).

For those reasons, although the allegations are thin, I conclude that Leonard has stated a colorable malfunction theory claim.

### c.   Failure to Warn

Leonard's failure to warn claim, however, is not viable.  "Strict liability applies to failure to warn claims where adequate warnings or instructions were not provided and where the harm suffered would not have occurred had adequate warnings been given."  *Karazin,* 2018 WL 4398250, at *5; *see also* Conn. Gen. Stat. § 52–572q(a) ("A product seller may be subject to liability for harm caused to a claimant who proves by a fair preponderance of the evidence that the product was defective in that adequate warnings or instructions were not provided."). Connecticut courts have indicated, at least in dicta, that warning defect claims arising out of section 52-572q are functionally equivalent to negligent failure-to-warn claims.  *See Gajewski v. Pavelo,* 36 Conn. App. 601, 611 (1994) ("[I]n practical terms, there is no difference between the statutory strict liability of § 52–572q and negligence with respect to the law of warnings."); *see also Moss v. Wyeth Inc*., 872 F. Supp. 2d 162, 173 (D. Conn. 2012) ("whether formulated under a strict liability or a negligence theory, section 52–572q only requires that a manufacturer warn of dangers about which it knew or should have known.").

Here, General Motors Company contends that Leonard has failed to plead "how the defendants' warnings were incomplete, in what way defendants could have supplemented them, or what risks defendants could have been aware of that they failed to appreciate."  Mot. to Dismiss, Doc. No. 36-1, at 10.  That argument is without merit because it demands too much of Leonard at this stage.  *Karazin,* 2018 WL 4398250, at *5 ("To the extent that Defendant requests detailed factual allegations regarding exactly what instructions should have been provided, its argument is unavailing as that information is both the type of detailed or elaborate factual

allegations not required at this stage of litigation, and some of it likely the type of information that could not be available to Plaintiffs prior to discovery.") (citation and quotation marks omitted).

Nonetheless, unlike the plaintiff in *Karazin*, whose failure to warn claim the court deemed plausible, Leonard has failed to offer any specific factual allegations concerning the warnings he did receive and how they were deficient. Instead, Leonard only cursorily asserts that Defendants failed to warn him that the vehicle in question was "assembled by General Motor's and [that] defective Takata airbag and seatbelt were installed." Am. Compl., Doc. No. 34, at 9. That defect is fatal to his claim. *See Mals,* 2020 WL 3270835, at *6 ("Plaintiff has failed to offer a single fact explaining what warning Smith & Nephew did provide, how it was inadequate or what the warning should have stated. . . . Because of that, Plaintiff has failed to meet the pleading standard for failure to warn.") (quotation marks omitted); *Lennox*, 2019 WL 1258918, at *3 ("Absent even basic factual support for this claim – for example, whether the blower motor was accompanied with any warnings or instructions at all and, if so, what they stated and why they were inadequate – Plaintiff's claim is nothing more than a conclusory assertion that the Court must disregard.").

Leonard has therefore failed to state a plausible failure to warn claim grounded in negligence or strict liability. The claim is **dismissed**.

### d. Breach of Warranty

#### i. Express Breach of Warranty

Leonard's breach of warranty claims fare no better. A plaintiff raising a claim for breach of express warranty must establish: "(1) existence of the warranty; (2) breach of the warranty; and, (3) damages proximately caused by the breach." *Philadelphia Indem. Ins. Co. v. Lennox*

*Indus., Inc.,* 2020 WL 705263, at *7 (D. Conn. Feb. 12, 2020).  "An express warranty is created when, among other things, the seller makes [a]ny affirmation of fact or promise to the buyer which relates to the goods and becomes part of the basis of the bargain."  *Id*. (quotation marks and citations omitted omitted).  Further, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."  *Id*. (citations omitted).

To survive a motion to dismiss a breach of express warranty claim, the complaint "must at least indicate the representation that the [ ] defendants are alleged to have made and breached."  *Id.* (emphasis and citation omitted).  "[A] breach of express warranty claim without any reference to the underlying representation lacks plausibility."  *Id*. (citation omitted).

In this case, the complaint does not identify any representations made and breached by Defendants.  Although Leonard alleges that Defendants fraudulently claimed that the car's airbag and seat belt system "was safe and would operate and protect" him, that allegation is similar to others that courts in this district have considered to be defectively conclusory.  *See, e.g., Philadelphia Indem. Ins. Co. v. Lennox Indus., Inc.,* 2020 WL 705263, at *7 (D. Conn. Feb. 12, 2020) (concluding that allegation that Defendants "breach[ed] the express and/or implied warranties that the subject [furnace and blower motor] would be free from defects, merchantable and safe to use for [their] general and intended purposes" was not enough to state a breach of express warranty claim).

Accordingly, Leonard has failed to a state a plausible claim for breach of express warranty and the claim is **dismissed**.

ii.  Implied Breach of Warranty

To state a claim for breach of implied warranty, a plaintiff must establish "(1) existence of the warrant; (2) breach of the warranty; and (3) damages proximately caused by the breach." *Id*. Connecticut law recognizes actions grounded in breaches of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. *Id*.; *see also* Conn. Gen. Stat. §§ 42a–2–314, 42a–2–315.

To state claim for breach of the implied warranty of merchantability, a party must allege that:  "(1) a merchant sold the goods; (2) the goods were defective and not merchantable at the time of sale; (3) injury occurred to the buyer or his property; (4) the injury was caused by the merchant's defective product; and (5) notice was given to the seller of the claimed breach." *Philadelphia Indem. Ins. Co.*, 2020 WL 705263, at *8.  The goods at issue are not merchantable when, among other things, they are not fit "for the ordinary purposes for which such goods are used" and "will not pass in the trade without objections."  *Id*.; *see also* Conn. Gen. Stat. § 42a-2-314(2).

In this case, Leonard's claim for breach of the implied warranty of merchantability fails because Leonard has not alleged that he ever notified Defendants of a claimed defect.  *Gallinari v. Kloth*, 148 F. Supp. 3d 202, 215 (D. Conn. 2015) (dismissing claim for breach of the implied warranty of merchantability when complaint did not allege that the plaintiff "notified Defendants of any claimed defect in the [product at issue]").

Moreover, Leonard has failed to state a colorable claim for breach of the implied warranty of fitness for a particular purpose.  To state such a claim, a plaintiff must establish: "(1) that the seller had reason to know of the intended purpose and (2) that the buyer actually relied on the seller."  *Philadelphia Indem. Ins. Co. v. Lennox Indus., Inc.*, 2020 WL 705263, at *9 (D. Conn. Feb. 12, 2020) (citation omitted).

Here, the complaint raises an inference that Defendants had reason to know of the intended purposes of the seat belts and airbags, and yet failed to design or manufacture them in an effective way. *See id*. Nonetheless, even when drawing all inferences in Leonard's favor, the complaint does not plausibly suggest that Leonard actually relied on Defendants or had a certain expectation of the products.

For those reasons, Leonard's implied breach of warranty claims are **dismissed**.

### e. Fraudulent Misrepresentation

Because the complaint primarily alleges that Defendants were aware that their representations were false, Leonard's fraudulent misrepresentation claims are subject to Rule 9(b)'s heightened pleading standard. *See Karazin.,* 2018 WL 4398250, at *7 ("Because the Amended Complaint alleges that Defendant knew its claims were false—not simply that it failed to exercise due care in making the alleged misrepresentations—its misrepresentation claims are subject to the heightened pleading standard of Rule 9(b).").  To meet that requirement, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* (citation omitted).

In this case, Leonard alleges that Defendants "fraudulently misrepresented" to Leonard that (a) the 2007 Chevrolet Cobalt would "deploy airbags upon impact at around 40 to 50 mph, and protect him from upper body injuries;" and (b) the "seatbelt safety restraint system would protect [him] from being thrown towards a front windshield, steering wheel, or anywhere outside of the range in which []the seat belt system was designed to cover."  Opp. to Mot. to Dismiss, Doc. No. 34, at 13.  Critically, however, Leonard has failed to identify who in particular made those statements, when or where the statements were made, or why they were fraudulent (i.e.,

why the Defendants knew they were false when made).  Accordingly, even when construing his

complaint liberally in light of his *pro se* status, the misrepresentation claims have not met the

particularity requirements of Rule 9b.

For those reasons, the fraudulent misrepresentation claims are **dismissed**.

2. *Violations of 49 C.F.R. §§ 571.208 and 571.209*

To the extent Leonard seeks to bring an independent claim under 49 C.F.R, §§ 571.208

and 571.209, that claim also cannot survive.

Pursuant to the National Traffic and Motor Vehicle Safety Act of 1966, 49 U.S.C. §

30101, et seq. ("the Safety Act"), the Department of Transportation promulgated the Federal

Motor Vehicle Safety Standards.  Federal Motor Vehicle Safety Standards 208 and 209—the

provisions that Leonard invokes—sets forth federal regulations regarding occupant crash

protection and seat belt assemblies.  49 C.F.R. §§ 571.208, 209.

Although the parties have not raised the issue, I note as an initial matter that courts have

uniformly concluded that the Safety Act does not create a private right of action.  *See, e.g.,*

*Burgo v. Volkswagen of Am.,* 183 F. Supp. 2d 683, 688 (D.N.J. 2001) ("Although the [Safety

Act] unquestionably establishes a comprehensive system of oversight regarding tire recalls, it

does not create a private right of enforcement."); *Handy v. General Motors Corp.,* 518 F.2d 786,

788 (9th Cir.1975) (per curiam) ("The district court correctly ruled that Congress did not intend

to create private rights of action [under the Safety Act] in favor of individual purchasers of motor

vehicles when it adopted the comprehensive system of regulation to be administered by the [the

Safety Act]."); *Campbell v. Gen. Motors Corp.*, 19 F. Supp. 2d 1260, 1274 (N.D. Ala. 1998)

("the [Safety Act] provides absolutely no private right of action for consumers"); *Ecker v. Ford

Motor Co.,* 2002 WL 31654558, at *5 (C.D. Cal. Nov. 12, 2002) ("The [Safety] Act  . . . does not

33

create a private right of action."); *In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig.*, 256 F. Supp. 2d 884, 900 (S.D. Ind. 2003) ("[E]very court addressing this issue has held that the Safety Act does not provide a private right of action.") (collecting cases).

I need not decide the question whether a private right of action exists because the claim can easily be dismissed on another ground: Leonard has failed to meet his pleading burden. The complaint's only reference to Safety Standards 208 or 209 is the allegation that the defendants violated those standards due to their "negligence" and "deliberate[] indifference . . . pursuant to the installation of an airbag and safety restraint system," as well as their "failure to notify" Leonard. *See* Am. Compl., Doc. No. 34, at ¶ 6. Those conclusory allegations do not "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and the complaint presents no other allegations that shed light on how the defendants failed to comply with any of the performance requirements set forth in Safety Standard 208 or 209. For that reason, I conclude that Leonard has failed to state a claim under sections 571.208 and 571.209.

Accordingly, Leonard's claims under sections 571.208 and 571.209 are **dismissed**.

3. *Fourteenth Amendment*

Finally, to the extent Leonard seeks to advance Fourteenth Amendment claims for due process and equal protection violations pursuant to 42 U.S.C. § 1983, those claims also cannot withstand the motion to dismiss.

To state a section 1983 claim, a plaintiff must show that he or she was injured by "a state actor or a private party acting under color of state law." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). And as General Motors Company notes, the Fourteenth Amendment can be violated only by conduct that "may be fairly characterized as 'state action.'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). "If a defendant's conduct satisfies the state

action requirement under the Fourteenth Amendment, then that conduct also constitutes action 'under color of' state law for purposes of § 1983." *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 229 (2d Cir. 2004).

State action requires: (1) "an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible;'" and (2) "that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *Cranley v. Nat'l Life Ins. Co. of Vermont*, 318 F.3d 105, 111 (2d Cir. 2003) (quoting *American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). Under the second requirement, "a plaintiff must show that the allegedly unconstitutional conduct is 'fairly attributable' to the state." *Id*. "Action is attributable to a state actor when it arises from a state's exercise of coercive power, is entwined in the management or control of state power over the private actor, or when the private actor operates as a willful participant in joint activity with the State or its agents, is controlled by an agency of the State, has been assigned or delegated a public function by the state, or is entwined with governmental policies." *Leone v. Cent. Connecticut State Univ.,* 2006 WL 8446754, at *6 (D. Conn. Aug. 3, 2006) (citing *Cranley*, 313 F.3d at 112) (quotation marks omitted).

Applying this two-prong framework, I first conclude that the complaint makes no allegations from which I can infer that the actionable conduct was caused by the exercise of a right or privilege granted to Leonard by the State. Moreover, the complaint does not suggest that the challenged conduct was attributable to the State of Connecticut. Although Leonard contends in his opposition that Defendants "are registered to do business in Connecticut," are "entwined into Connecticut's Public Institutions," and have "public officials working for its corporations,

dealerships, and agencies," that is insufficient because those assertions do not inform how the challenged action in particular was "fairly attributable" to the State. *Ruzika v. Cmty. Sys., Inc.*, 2004 WL 3153170, at *3 (D. Conn. Sept. 8, 2004) ("The state's involvement with the private company must pertain to the challenged action for the state to be held accountable in a Section 1983 case"); *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.").   Accordingly, Leonard has not adequately pled that the Defendants' conduct qualified as "state action" for purposes of his Fourteenth Amendment claim.

For those reasons, his Fourteenth Amendment claims are **dismissed**.

### D.   Motion for Appointment of Counsel

On April 7, 2020, Leonard filed a motion for appointment of counsel.  *See Mot.*, Doc. No. 41.  He avers, among other things, that he is unable to afford counsel, has no access to the law library, and has attempted to seek counsel on his own without success.  *Id*. at 1.  Although the case is "likely to be of substance" and raises complex factual and legal questions, *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994), Leonard should enjoy better luck in locating counsel now that his complaint has survived a motion to dismiss.  The motion is therefore **denied** without prejudice to refiling if Leonard is unsuccessful in finding counsel after a diligent search.

## III.    Conclusion

For the foregoing reasons, the motion to dismiss is **granted in part** and **denied in part.** All claims against General Motors Company are **dismissed** for lack of personal jurisdiction, and all CPLA claims against General Motors Holdings LLC and NGMCO Inc. are **dismissed** for

failure to state a claim.  The CPLA claims grounded in failure to warn based on negligence and

strict liability; breach of express and implied warranty; and fraudulent misrepresentation are also

**dismissed** against General Motors LLC, General Motors Corporation, GM LLC, and Motors

Liquidation Company; the CPLA claims grounded in manufacturing defects and design defects

based on negligence and strict liability, and in the malfunction theory, may proceed against those

defendants.  The claims brought under 49 C.F.R §§ 571.208 and 571.209, as well as the

Fourteenth Amendment claims, are **dismissed**.

There is no indication on the docket that General Motors LLC, General Motors

Corporation, GM LLC, or Motors Liquidation Company has been served.  Rule 4(m) states, *inter*

*alia*, that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on

motion or on its own after notice to the plaintiff—must dismiss the action without prejudice

against that defendant or order that service be made within a specified time."  Fed. R. Civ. P.

4(m).  Although Leonard has not articulated any good cause for the failure to serve those

defendants, I will exercise my discretion to grant him an extension of **60 days** from the date of

this ruling to effect proper service of the amended complaint on General Motors LLC, General

Motors Corporation, GM LLC, and Motors Liquidation Company.  *Estate of A.A. v. United*

*States*, 2016 WL 7471634, at *7 (D. Conn. Dec. 28, 2016) ("Rule 4(m) gives a district court

discretion to grant an extension for service of process, even in the absence of good cause.")

(citing *Meilleur v. Strong*, 682 F.3d 56, 61 (2d Cir. 2012)) (quotation marks omitted).

The stay on discovery is hereby lifted.  The new discovery deadline is June 1, 2021; the

dispositive motions deadline is June 30, 2021.

So ordered.

Dated at Bridgeport, Connecticut, this 30th day of November 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge